UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PEYTON INGE, INDIVIDUALLY AND ON BEHALF OF THE CENTRAL MOTORCYCLE ROADRACING ASSOCIATION, | § § § § | |
| | § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:16-CV-0042-B |
| WALTER WALKER, TED PHILLIPS, JOHN ORCHARD, STEVEN MCNAMARA, JAMES DUGGER, TY HOWARD, ERIC FALT, CENTRAL MOTORCYCLE ROADRACING ASSOCIATION, NANCY SELLECK, BILL SYFAN, and TOM ANDERSON, | § § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff's Motion to Remand and Request for Attorneys' Fees. Doc. 20. For the following reasons, the Court **DENIES** Plaintiff's Motion.

## I.

## BACKGROUND

A.   *Factual History*

According to Plaintiff Peyton Inge (Inge), "[t]his lawsuit is a textbook example of what happens when good old boys encounter an individual who dares question how hundreds of thousands of dollars in nonprofit corporation cash are accounted for." Doc. 20-1, Pl.'s Fourth Am. Pet. and Req. for Declaratory Relief ¶ 17 [hereinafter Pet.]. In reality, it is a case about a former member of a

nonprofit motorcycle hobby club, Inge, who accused a number of current and former club directors of violating the Racketeer Influenced and Corrupt Organizations Act (RICO) and committing several state law torts. *Id.* ¶¶ 20, 53–79.

The Central Motorcycle Roadracing Association (Corporation or CMRA) is a 650-member, Texas-based 501(c)(7) nonprofit corporation that (1) issues motorcycle race licenses to allow motorcyclists to participate in races across the country; and (2) hosts its own motorcycle races. *Id.* ¶¶ 3, 21–22. The Corporation is governed by a seven-person Board of Directors (Board), that, according to Inge, is supposed to conduct annual elections for two to three of its seven seats. *Id.* ¶ 24. In practice, however, Inge alleges it operates more like a cabal in that directors return for multiple terms and engage in nefarious schemes, including: failing to make board meetings and financial records readily available to members, embezzling money,[1] engaging in insider deals,[2] and manipulating elections.[3]

As to the electoral fraud specifically, Inge points to Defendant Nancy Selleck's behavior during the CMRA's 2014 election where she allegedly did the following:

[Former Secretary] Selleck used her position as Secretary and Administrator of the CMRA's website and computer forum to intentionally suggest that [Inge] committed certain nefarious acts in an effort to injure [his] reputation and expose [him] to public hatred, ridicule, contempt, reputational damage, and financial injury . . . [and]

---

[1] Specifically, Inge asserts that two defendants, Nancy Selleck (Selleck) and Bill Syfan (Syfan), deposited more than $50,000 into personal bank accounts. Doc. 20-1, Pet. ¶ 53.

[2] *See id.* ¶¶ 30–31, 57.

[3] *Id.* ¶¶ 25, 35–36

to throw the election [to another candidate] because she was afraid [Inge] would

win.

*Id.* ¶ 36 (footnote omitted). Inge then noticed discrepancies in previous election results that favored

Selleck-supported candidates, including Selleck's husband, Syfan. *Id.* ¶ 37. Specifically, Inge alleges

that Selleck has been responsible for mainlining membership lists, mailing election ballots to non-

eligible voters, and failing to mail ballots to some eligible voters. *Id.* ¶ 37. After discovering these

discrepancies, Inge brought them to the attention of Board member James Dugger (Dugger),

suggested someone may have manipulated the ballots, and requested that the Board conduct a

private audit. *Id.* ¶ 38. Dugger and/or fellow Board member John Orchard (Orchard) refused to

conduct an audit. *Id.* ¶ 39. Undeterred, Inge posted a series of questions directed toward the Board

on the CMRA website, asking about the ballot discrepancies and about inconsistencies regarding

previous CMRA tax returns. *Id.* ¶ 40. Selleck answered his questions but her answers "enraged" the

other Defendants, some of whom allegedly (1) began to publically ridicule Inge; (2) decided, behind

the scenes, to terminate his race license; and (3) schemed to leak certain information that would

jeopardize Inge's membership in the organization. *Id.* ¶¶ 41–42.

   In response to Defendants' behavior, Inge requested that the Board partially audit the

CMRA's 2014 election results, disclose financial records and meeting minutes, and apologize to the

CMRA "for their verbal abuse," presumably of him. *Id.* ¶ 44. Rather than comply, Defendants hired

an attorney, as they believed a "member" had threatened to sue the CMRA and was being

uncooperative. *Id.* ¶ 44. Defendants allegedly stated that Inge's intent was to "destroy the CMRA."

*Id.* ¶ 46. Defendants spread the "malicious falsities" that Inge's allegations were false in order to

convey to the organization that Inge was a "sue-happy malcontent." *Id.* ¶¶ 47, 49. These statements

apparently reached beyond CMRA members to Inge's colleagues at his law firm. *Id.* ¶ 47. One defendant, Orchard, separately emailed all 650 CMRA members and "misrepresent[ed] facts about [Inge] and [his] goals"; according to Inge, Orchard also posted that email to the CMRA forum. *Id.* ¶ 50. Inge alleges that a few days after Orchard's email was sent, a group of racers voiced their disagreement with Orchard's posts, at which point Orchard locked the thread, and Defendants voted to revoke Inge's license—without the required hearing—based on his posted questions. *Id.* ¶ 51.

B.   *Procedural History*

On December 17, 2014, Inge sued Defendants in the 191st Judicial District Court of Dallas County Texas. Doc. 1-8, Pl.'s Orig. Pet. Over the course of the next year, Inge amended his petition multiple times, and the parties engaged in a slew of discovery disputes. *See* Doc. 1, Notice of Removal. On December 17, 2015, one year after he filed his initial petition, Inge filed his Fourth Amended Petition and Request for Declaratory Relief, the now-operative pleading in this case. Doc. 20-1, Pet. There, Inge brought the following claims: (1) a RICO claim against Walker, Orchard, McNamara, Selleck, Syfan, and Anderson (Doc. 21-1, Pet. ¶¶ 53–60); (2) a shareholder derivative action and related ultra vires claims against Phillips, Orchard, McNamara, Dugger, Howard, Falt, Selleck and Syfan (*Id.* ¶¶ 61–64); (3) general "individual harm" allegations against Phillips, Orchard, McNamara, Dugger, Howard, Falt, Selleck, and Syfan (*Id.* ¶ 65); (4) slander and libel claims against all Defendants (*Id.* ¶¶ 66–76); (5) a breach of contract claim against the CMRA (*Id.* ¶¶ 77–78), and, finally, (6) a conspiracy claim against all Defendants except the CMRA (*Id.* ¶ 79). Inge also requested that each Defendant answer his Requests for Disclosure "within fifty (50) days of service of this First Amended Petition and Requests for Disclosure on Defendants" (*Id.* ¶ 80); and asked for declaratory relief (*Id.* ¶¶ 81–82) and damages (*Id.* ¶ 82).

On January 7, 2016, Defendants removed the case to this Court (Doc. 1, Notice of Removal) and, approximately two weeks later, Inge moved to remand it back to state court. Doc. 20, Pl.'s Mot. to Remand and Req. For Att'y Fees [hereinafter Mot. to Remand]. Defendants then responded to Inge's Motion, and Inge replied in turn. Doc. 32, Defs.' Resp.; Doc. 43, Pl.'s Reply. Inge's Motion is now ready for review.

## II.

## LEGAL STANDARD

Motions for remand are governed by 28 U.S.C. § 1447(c), which provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c) (2012). When considering a motion to remand, "[t]he removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002).

The federal removal statute, 28 U.S.C. § 1441(a), permits a defendant to remove to federal court any civil action that falls within the original jurisdiction of the district courts. District courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. This, however, raises "significant federalism concerns" because removal effectively "deprive[s] the state court of an action properly before it." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281 (5th Cir. 2007) (quoting *Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 365 (5th Cir. 1995)). As a result, the removal statute must be strictly construed, and "any doubt about the propriety of removal must be resolved in favor of remand." *Id.* at 281–82; *see also Manguno*, 276 F.3d at 723.

# III.

# ANALYSIS

Applying the above standard, for the reasons that follow, the Court concludes that Defendants' removal of this action to federal court was proper, and that the Court will continue to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims. Contrary to Plaintiff's assertions, the Court does not have the authority to remand the entire case back to state court, as Plaintiff's RICO claim gives this Court original jurisdiction. Furthermore, as also addressed below, the Court finds that the factors embodied in 28 U.S.C. § 1367 as well as judicial economy, fairness, convenience, and comity militate in favor of exercising supplemental jurisdiction over the remaining state-law claims.

A.    *Remanding the Entire Case*

Inge argues that this Court should decline to exercise jurisdiction over his RICO claim and instead remand the entire case because (1) Texas has concurrent jurisdiction and (2) the parties have already engaged in discovery and related disputes for over a year, so remanding the case would "permit Defendants to re-litigate novel issues of law." Doc. 21, Br. in Supp. of Pl.'s Mot. to Remand ¶ 2 [hereinafter Pl.'s Brief].

Defendants counter that exercising federal question jurisdiction is not discretionary in federal courts, and therefore, district courts cannot remand live, federal claims to state court.[4] Thus, because Inge's RICO claim is live and properly removed, the Court does not have discretion to remand the

---

[4] Doc. 32, Defs.' Resp. 3 (citing *Poche v. Texas Air Corps, Inc.*, 549 F.3d 999, 1005 (5th Cir. 2008); *Blankenship v. Weinstein & Riley, P.S.*, No. 3:10-CV-1821-G, 2011 WL 2713698, at *2–3 (N.D. Tex. July 12, 2011); *May v. Apache Corp.*, 870 F. Supp. 2d 454, 458 (S.D. Tex. 2012); *Palomino v. Miller*, No. 3-06-CV-0932-M, 2006 WL 2661127, at *2 (N.D. Tex. Sept. 14, 2006)).

entire case back to state court. Doc. 32, Defs.' Resp. 3. For this reason, Defendants argue the Court should deny Inge's motion and refuse to remand this case. *Id.*

Inge replies with a set of general propositions, including the fact that Congress intended to restrict, rather than expand, removal jurisdiction in amending §1441(c). Doc. 34, Pl.'s Reply ¶ 2. Inge further disputes Defendants' argument by citing several cases, including *Metro Ford Truck Sales, Inc. v. Ford Motor Co.,* for the proposition that "[c]ourts that have considered the meaning of the new § 1441(c) have decided overwhelmingly that the provision now permits them to remand the entire action, federal claims and all, if the state law claims predominate."[5]

Defendants have the better argument here. This Court has no authority to remand Inge's RICO claim, and therefore it cannot remand the entire case. While the court in *Metro Ford* did indeed find that "the new § 1441(c) permits courts to remand an entire action, or distinct claims, both state and federal, if state law predominates,"[6] the *Laurents* Court held that district courts lack authority to remand claims that confer removal jurisdiction. *See Laurents v. Arcadian Corp.,* No. 94-41183, 1995 WL 625394, at *2 (5th Cir. Oct. 4, 1995) ("Although [a] district court has discretion to remand state law claims that were removed along with one or more federal question claims, *it may not remand the component claims that are conclusively deemed to have arisen under federal law,* absent a defect in the removal procedure or circumstances rendering the retention of jurisdiction 'inappropriate.'") (emphasis added). Insofar as *Metro Ford* and *Laurents* conflict, *Laurents* controls. *See Poche,* 549 F.3d at 1005 ("To the extent *Laurents* conflicts with the later-decided *Metro Ford,* we

---

[5] Doc. 34, Pl.'s Reply ¶¶ 2–3 (citing *Metro Ford Truck Sales, Inc. v. Ford Motor Co.,* 145 F.3d 320, 328 (5th Cir. 1998); *Jones v. Belhaven College,* 98 F. App'x 283, 284 (5th Cir. 2004)).

[6] *Metro Ford Truck Sales,* 145 F.3d at 328.

are bound to follow *Laurents*.") (citing *United States v. Walker*, 302 F.3d 322, 324–25 (5th Cir. 2002) (noting "this circuit's rule that one panel may not overrule a prior panel opinion and the earlier precedent controls")). Thus, because Inge's RICO claim was what conferred removal jurisdiction upon this Court (*see* Doc. 1, Notice of Removal 3) this Court is without authority to remand that claim, and therefore it cannot remand the entire case.

B.    *Supplemental Jurisdiction over Inge's Remaining State-Law Claims*

As the Court has determined it cannot remand Inge's RICO claim, and therefore cannot remand the entire case, the relevant inquiry becomes whether the Court should sever and remand Inge's remaining state law claims.[7] A federal court may exercise supplemental jurisdiction over all claims, including state-law claims, if they are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). But even if a court has supplemental jurisdiction, it may still decline to exercise it over some claims after considering four statutory factors and four common law factors. *Id.* § 1367(c); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). For the reasons that follow, the Court concludes that it does have supplemental jurisdiction over Inge's state law claims and declines to sever the state law claims.

1.    Does Supplemental Jurisdiction Exist Here?

A plaintiff's claims are part of the same case or controversy as a claim with original jurisdiction if they "derive from a common nucleus of operative fact." *United Mine Workers of Am.*

---

[7] Inge's remaining state-law claims that he argues should be remanded are derivative claims arising from a duty of good faith and ultra vires violations; slander and libel; breach of contract; and conspiracy. Doc. 21, Pl.'s Br. ¶ 6.

*v. Gibbs*, 383 U.S. 715, 725 (1966). In other words, if they are "considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding." *Id.*

Inge, argues that this Court does not have supplemental jurisdiction over his state-law claims. Doc. 20, Mot. to Remand ¶ 12. Inge supports his argument by asserting (1) Defendants failed to identify a basis for supplemental jurisdiction in their Notice of Removal (2) Defendants failed to identify a "common nucleus of operative fact" between the RICO claim and the state-law claims; and (3) the elements of Inge's RICO claim arise out of distinct sets of operative facts." Doc. 21, Pl.'s Br. ¶ 5. Inge does not elaborate upon those arguments.

Defendants address only Inge's contention that the RICO claim and state-law claims do not arise out of a "common nucleus of operative fact."  Doc. 32, Def.'s Resp. 4. Defendants note how Inge expressly incorporated his RICO claim into several of his state-law claims in the petition.[8] Furthermore, several facts alleged in relation to the RICO claim are identical to facts alleged with the derivative, ultra vires, and "individual harm" claims. These include Inge's allegations regarding "decisions about producing the CMRA's books and records; the use and oversight of the CMRA's credit or debit cards; and alleged insider dealing and other wrongful conduct relating to the alleged relationship between the CMRA and LSTD." Doc. 32, Def.'s Resp. 5.

Regarding Inge's other state-law claims for defamation, conspiracy, and breach of contract,

---

[8] Inge incorporated the alleged RICO violation into his shareholder derivative and ultra vires claims by listing the relevant RICO statute, 18 U.S.C. § 1964(c), within the list of alleged wrongs for those causes of action. Doc. 32, Def.'s Resp. 4 (citing Pl.'s Pet. ¶¶ 61, 64). Furthermore, Inge "re-alleged" all acts and omissions identified within the shareholder derivative and ultra vires claims under the "individual harm" claims; therefore, Inge considered a violation of the RICO statute an "individual harm." *Id.* (citing Pl.'s Pet. ¶ 65).

Defendants argue that the facts underlying these claims are similar to those underlying the RICO claim. Doc. 32, Def.'s Resp. 5–6. In Inge's RICO claim, he alleges that Defendants' behavior of conspiring to cover up fraud, planning to slander Inge, and engaging in extreme defamation constituted a violation of RICO. Doc. 20-1, Pet. ¶¶ 58–59. Conduct alleged as part of the RICO claim also overlaps with conduct alleged as part of the breach of contract claim because both describe Defendants' refusal to produce CMRA's books and records. *Id.* ¶¶ 59, 77. Besides these specific factual similarities, all of Inge's claims are based generally on the alleged misconduct by Defendants taken in relation to the CMRA. *See id.* ¶¶ 53–79.

Inge's argument centers primarily on the difference in the elements necessary to prove his RICO claim versus his state-law claims rather than any distinction in the underlying facts. Doc. 34, Pl.'s Reply ¶ 5. But the Court dismisses the proposition that if multiple causes of action have "distinctly different" elements there can exist no common nucleus of operative fact. At least one district court within this Circuit has explicitly rejected the same argument in accordance with *United Mine Workers of America. See Schuchart & Assocs. v. Solo Serve Corp.*, SA-81-CA-5, 1983 WL 1147, at *21 (W.D. Tex. June 28, 1991) (deeming unpersuasive the argument that supplemental jurisdiction does not exist if elements of proof are entirely different even when the underlying facts "arise from the same series of events").

Following this line of reasoning, and focusing on the underlying facts as opposed to the elements of proof, the Court concludes that the RICO claim and the state-law claims are derived from the same "common nucleus of operative fact" such that Inge "would ordinarily be expected to try them all in one proceeding." *United Mine Workers of Am.*, 383 U.S. at 725.

As the Court has concluded that it does have supplemental jurisdiction, Inge's reference to

the mandatory severance provision of 28 U.S.C. § 1441 is inapposite. Doc. 20, Mot. to Remand ¶ 12; Pl.'s Br. ¶ 4. Section 1441(c)(2) mandates severance and remand of certain claims upon removal. This provision, however, applies only in cases where an action involves (1) a federal question claim and (2) a claim that "was not within the original or supplemental jurisdiction of the district court or a claim that has been made nonremovable by statute." *Id.* § 1441(c)(2). While the case involves a federal question claim, this Court has supplemental jurisdiction over the remaining state-law claims. Thus, the mandatory severance provision does not apply.

> 2.    Should the Court Decline to Exercise Supplemental Jurisdiction?

Even if the Court has the power to assert supplemental jurisdiction over a party's state-law claims, "[t]hat power need not be exercised in every case in which it is found to exist." *United Mine Workers of Am.*, 383 U.S. at 726. The Court, instead, "may decline to exercise supplemental jurisdiction" based on its discretionary consideration of various statutory and common law factors. 28 U.S.C. § 1367(c); *Carnegie-Mellon Univ.*, 484 U.S. at 3570. The statutory factors and common law factors are weighed and considered together. *Enoch v. Lampasas Cnty*, 641 F.3d 155, 160 (5th Cir. 2011). No specific factor, though, is dispositive. *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 587 (5th Cir. 1992).

> i.    *Statutory factors*

The relevant statutory factors a court considers when determining whether to exercise its supplemental jurisdiction over a claim are whether (1) "the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it had original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining

jurisdiction." 28 U.S.C. § 1367(c). Inge's arguments for why this Court should decline to exercise its supplemental jurisdiction are related to the first, second, and fourth factors: Inge argues that his state law claims present novel and complex state law issues, that his state law claims predominate over his RICO claim, and that failing to remand would allow defendants to re-litigate issues already litigated in state court. Doc. 21, Mot. to Remand ¶ 6. As this Court is not dismissing the RICO claim, over which it has original jurisdiction, the third factor will not be addressed.

       a.      Whether claims involve a novel or complex issue of state law

Regarding the first § 1367(c) factor, the Court declines to recognize Inge's state-law claims as novel or complex. The Fifth Circuit has determined that a Texas state-law claim is novel when there is no guidance from the Supreme Court of Texas. *See Enochs*, 641 F.3d at 159. Further, if substantive state law is not necessary to determine the matter, or if the state law is easily applied, the state-law claims will not be considered novel or complex. *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 603 (5th Cir. 2009); *Mendoza v. Murphy*, 532 F.3d 342, 346 (5th Cir. 2008).

For the majority of Inge's claims, there is extensive Texas Supreme Court precedent for guidance.[9] As to Inge's ultra vires claims, Defendants argue that the disposition requires only "a straightforward application of statutory language."[10] Similarly, resolution of Inge's breach of contract claims will largely be based on an application of several sections of Chapter 22 of the Texas Business

---

[9] *See, e.g.*, *Neely v. Wilson*, 418 S.W.3d 52, 60–61 (Tex. 2013) (outlining the elements of defamation for both public and private individuals); *Insurance Co. of N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998) (summarizing and expanding upon the elements of civil conspiracy claims). This Court has also examined Texas cases that address derivative suits against nonprofit organizations. *Bridgewater v. Double Diamond-Delaware, Inc.*, No. 3:09-CV-1758-B, 2011 WL 1671021, at *7–8 (N.D. Tex. Apr. 29, 2011).

[10] Citing Tex. Bus. Orgs. Code Ann. § 20.002(c).

Organizations Code. *See* Pl.'s Br. ¶ 6. As Inge has alleged state-law claims that have clear guidelines for application, the claims are not so novel or complex that a state court would be a more appropriate forum.

> b.   Whether state law claims predominate over federal claims

The second 28 U.S.C. § 1367(c) factor concerns whether the state law claims predominate over the claim giving the federal court original jurisdiction. Inge alleges that his state-law claims predominate over his RICO claim with no further elaboration. Pl.'s Br. ¶ 6. Defendants disagree and give three reasons: (1) Inge's RICO claim incorporates aspects of his state law claims; (2) Inge's state law shareholder derivative and ultra vires claims incorporate his RICO claim; and (3) both the RICO claim and the state law claims are asserted largely against the same defendants. Doc. 32, Defs.' Resp. 9–10.[11] Inge replies by reiterating his conclusory allegation and arguing that because the state-law claims form the basis of the RICO claim at issue, they predominate. Doc. 34, Pl.'s Reply. ¶ 4.

The Court finds that Inge's state law claims *do* substantially predominate. As an initial matter, the Court acknowledges that § 1367's standard is not susceptible to bright-line rules. For example, one court declined to exercise supplemental jurisdiction over a plaintiff's state law claims because the claim giving the court original jurisdiction was "the essence of the suit" and the other claims were only secondary. *Lawler v. Miratek Corp.*, EP-09-CV-252-KC, 2010 WL 743925, at *6 (W.D. Tex. Mar. 2, 2010) (citation omitted). To reach this conclusion, the court compared (1) the amount of damages the plaintiffs asked for on their federal claim versus the amount they asked for

---

[11] Citing *Cooper v. City of Dallas, Tex.*, 3:13-CV-1330-N-BK, 2013 WL 4675665, at *3 (N.D. Tex. Aug. 30, 2013); *Sturgeon v. Jackson*, No. EP-10-CV-244-PRM, 2011 WL 3678472, at *7 (W.D. Tex. Feb. 9, 2011) (declining to remand state claims where state and federal claims were factually interrelated and were brought against the same defendants).

on their state claims; and (2) the number of theories of discrimination asserted in their federal claims versus the number of overlapping defamation counts in their complaint. *Id.* Needless to say, then, the process of determining whether state law claims "substantially predominate" over their federal counterparts is far from an exact science.

Inge has not demanded a specific damages figure, rendering the first *Lawler* criterion useless here. *See* Doc. 20-1, Pet. ¶ 81. The second, however, bears more fruit. Inge offers far more theories of liability—and brings many more counts—on his state claims, as compared to his RICO claim. *Compare id.* ¶¶ 53–60 *with id.* ¶¶ 61–79. Thus, at first glance, this case may warrant remand. But the analysis does not end here.

As a corollary to § 1367's multi-factor supplemental jurisdiction test, courts are prohibited from "split[ting] apart claims that are too closely interconnected when remanding part of a case to state court," even though they may generally "split claims arising from the same nucleus of operative facts." *Lawler*, 2010 WL 743925, at *7 (citing *Eastus v. Blue Bell Creameries, L.P.*, 97 F.3d 100, 105 (5th Cir. 1996) (holding that claims remanded back to state court after a federal-question removal must be "separate and independent")). In *Eastus*, the Fifth Circuit compared the plaintiff's Family Medical Leave Act claim—where the plaintiff alleged that the defendant wrongfully fired him in retaliation for taking family leave—with his intentional infliction of emotional distress claim, which was also based on the discharge. *Eastus*, 97 F.3d at 105. There, the court found that the plaintiff's federal and state claims were both based upon the plaintiff's termination, meaning that there was "[a] single wrong" (the termination), and that "the various claims [asserted in the suit] [were] simply different theories of recovery." *Id.*

Inge's case is somewhat analogous. The "wrong" Inge alleges he and CMRA suffered is the

- 14 -

same in both his federal and state claims as they are all based on the alleged misconduct by this specific group of Defendants taken in relation to the CMRA and Inge. *See* Pet. ¶¶ 53–79. Some of the deeds done may vary from claim to claim, but Inge's allegations stem from his apparent discovery of Board misconduct and the reactions of Board members to his accusations. *Id.* As discussed above, Inge's RICO claim is based upon certain Board members misappropriating CMRA money, misusing CMRA debit cards, and engaging in insider deals. *Id.* ¶¶ 53–60. His state law claims, on the other hand, are based on allegations that the CMRA failed to produce books and records, engaged in possible electioneering, and perhaps prevented independent counsel from examining any misdeeds within the organization. *Id.* ¶¶ 61–79.

The two groups of activities are, however, intertwined. Logic suggests that misappropriating money, misusing debit cards, and engaging in insider deals would necessarily lead to a failure to produce books and records, efforts to manipulate elections, and attempts to prevent independent counsel from investigating claims. This is common sense. Severing claims that arise from such intertwined facts risks running afoul of *Eastus*'s mandate that courts must not remand state law claims unless they are "separate and independent" from the removed federal question claim. *Eastus,* 97 F.3d at 105; *see also Lawler,* 2010 WL 743925, at *7 ("the Court should not split apart claims that are too closely interconnected when remanding part of a case to state court"). Thus, while what caused Inge's "wrongs" might be not be identical across the state and federal claims, the two sets of causes are so intertwined as to make severing and remanding his state law claims inappropriate.

c.      Whether there are other compelling reasons

Finally, the Court turns to the final statutory factor: whether there are exceptional circumstances that compel the court to decline jurisdiction. 28 U.S.C. § 1367(c)(4). The Fifth

Circuit has found such compelling reasons where state-law claims in federal court were identical to claims pending in state court. *Hays Cnty Guardian v. Supple*, 969 F.2d 111, 125 (5th Cir. 1992). The Fifth Circuit has also used the common law factors that are addressed below as a tool to analyze this factor; if the common law factors weigh heavily in favor of remand, then that itself is a compelling reason to remand. *Enochs*, 641 F.3d at 159. This statutory factor of "compelling reasons" is used only to examine "reasons that override any considerations that might lead to retaining the case." *Welch v. Jannereth*, 496 F. App'x 411, 413 (5th Cir. 2012).

Inge argues that the Defendants' intent to re-litigate all of the derivative issues previously litigated in state court creates such a compelling reason. Doc. 21, Mot. to Remand ¶¶ 6, 8. Defendants, though, refute Inge's contention and argue: (1) Inge offers no legal support for his conclusion; (2) Inge, too, has sought re-litigation in federal court on several issues that the state court decided in Defendants' favor; (3) Defendants' challenging Inge's claims cannot be seen as a particularly compelling or exceptional circumstance as federal courts are able to modify state court orders in removed cases; and (4) Defendants have not had the ability to fully litigate over Inge's claims as he first brought the RICO claim in an amended petition filed a year after the original petition. Doc. 32, Defs.' Resp. 10–12 (citations omitted).[12] Inge does not address these arguments in his reply.

Neither Inge nor Defendants offer case law to support their arguments, save for Defendants as to their argument that federal courts are permitted to overturn state court orders post-removal.

---

[12] Defendants also argue that, during that year, "the parties . . . pursued extensive discovery and a handful of preliminary matters," and that Inge "provides no support for any contention that pursuit of discovery in state court constitutes an exceptional circumstance or compelling reason for declining supplemental jurisdiction." Doc. 32, Defs.' Resp. 11.

*See* Doc. 32, Defs.' Resp. 11. Unlike the court in *Hays County Guardian* where there were identical state-law claims pending in state court, here, all state-law claims are currently in federal court. Furthermore, as discussed below, the common law factors do not favor remand and thus do not offer any additional compelling reasons to remand. The Court concludes that there are no compelling reasons that would override a decision to retain the case.

       *ii.*     *Common law factors*

Besides considering the statutory factors, a court also considers "values of judicial economy, convenience, fairness, and comity" when determining whether to exercise supplemental jurisdiction over a removed case. *Carnegie-Mellon Univ.*, 484 U.S. at 350; *Mendoza*, 532 F.3d at 346. While Inge does not address the relevant common law factors, Defendants argue that when considered together, the factors weigh in favor of denying Plaintiff's Motion to Remand. Doc. 32, Defs.' Resp. 12–14.

Regarding judicial economy, Defendants argue the factor disfavors remand because both parties have participated in extensive discovery prior to any substantive rulings. Doc. 32, Defs.' Resp. 12. In *Enochs*, the Fifth Circuit determined that the factor of judicial economy favored remand because the parties had participated in little discovery and had not briefed all the issues when the court considered remand, so the danger of wasting time or money by duplicated research was not present. 641 F.3d at 159. Unlike in *Enochs*, the parties in this lawsuit do run more of a risk of wasting time and resources as the case has been pending in federal court since January of 2016. Doc. 1, Removal Notice. The case, however, was in state court for about one year, as it was filed on December 17, 2014. *Id.* at 2. The Court finds, then, that this factor is neutral as the parties have actively litigated in both state and federal court for a substantial period of time.

The next factor, fairness, "concerns the prejudice to the parties that would arise from

dismissal." *Parker & Parsley*, 972 F.2d at 588. Defendants argue that the fairness factor favors maintaining supplemental jurisdiction because maintaining parallel litigation in two venues would be more expensive and there is a danger of inconsistent conclusions as many of the federal and state issues are intertwined. Doc. 32, Defs.' Resp. 12–13. The Court agrees.

Regarding convenience, Defendants argue that this factor, too, weighs against remand because both the state court and the federal court are located in Dallas, Texas. Doc. 32, Defs.' Resp. at 13. In *Enochs*, the Fifth Circuit relied on location of the courts to determine the convenience factor and concluded that the factor weighed in favor of remand because the federal court was not in the same location as the parties, witnesses, and evidence; the state court, however, was located near the parties. *Enochs*, 641 F.3d at 160. When considering convenience in relation to location, the Court determines that the factor is neutral as the state and federal court are located within the same city.

The last factor concerns the "important interests of federalism and comity," where the limited jurisdiction of the federal court must be considered and how federal courts are "not as well equipped for determinations of state law as are state courts." *Enochs*, 641 F.3d at 160 (citing *Parker & Parsley*, 972 F.2d at 588–89). The courts in *Enochs* and *Parker & Parsley* both found comity to weigh in favor of remand, but in both cases the court had dismissed every federal claim that gave the court original jurisdiction. *Enochs*, 641 F.3d at 158, 160; *Parker & Parsley*, 972 F.2d at 589. Here, however, the case still includes a live federal claim that gives the Court original jurisdiction. Thus, the weight usually given to interests of federalism and comity is not applicable.

As fairness favors retaining supplemental jurisdiction, and the remaining factors of judicial economy, convenience, and comity are neutral, the Court concludes that the common law factors,

when considered together, weigh in favor of maintaining supplemental jurisdiction over the remaining state-law claims. Furthermore, after weighing the statutory and common law factors together, the Court concludes that they favor retaining jurisdiction. Thus, this Court will continue to exercise supplemental jurisdiction over Inge's remaining state-law claims. As the Court will not be remanding the case, Plaintiff's additional request for attorneys' fees under 28 U.S.C. § 1447(c) is irrelevant because the statute only considers attorneys' fees in the context of remand.

## IV.

## CONCLUSION

For the reasons stated above, the Court concludes that it may not remand the entire case, has supplemental jurisdiction over the remaining state-law claims, and will continue to exercise such supplemental jurisdiction. Therefore, Plaintiff's Motion to Remand and Request for Attorneys' Fees (Doc. 21) is **DENIED**.

SO ORDERED.

SIGNED: September 15, 2016.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE