UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| PEYTON INGE, INDIVIDUALLY AND ON BEHALF OF THE CENTRAL MOTORCYCLE ROADRACING ASSOCIATION, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 3:16-CV-0042-B |
| WALTER WALKER, TED PHILLIPS, JOHN ORCHARD, STEVEN MCNAMARA, JAMES DUGGER, TY HOWARD, ERIC FALT, CENTRAL MOTORCYCLE ROADRACING ASSOCIATION, NANCY SELLECK, BILL SYFAN, and TOM ANDERSON, | § § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6). Doc. 103. A hearing was held on the motion on October 23, 2017. For the reasons that follow, the Court **GRANTS** in part and **DENIES** in part Defendants' motion.[1]

I.

BACKGROUND

This case arises out of Plaintiff Peyton Inge's (Inge) termination from a motorcycle racing

---

[1] A portion of the Court's rulings set forth below in this Order were announced from the bench during the hearing. The Order memorializes those rulings. Otherwise, the Court's Order contains rulings on issues that were heard but not resolved at the hearing.

-1-

club. Central Motorcycle Roadracing Association, Inc. (CMRA) is a 501(c)7 nonprofit corporation that hosts amateur motorcycle races. Doc. 90, Pl.'s Am. Compl., ¶ 17. Like other corporations, CMRA is governed according to its bylaws and led by directors. *Id.* Each year, CMRA holds board elections. *Id.* Inge unsuccessfully ran for a board position in 2013 and in 2014. *Id.* ¶¶ 22–24. His campaign's platform was based on the board's alleged failure to maintain accurate financial records, *id.* ¶¶ 22–23, the board's lack of transparency, *id.*, and CMRA's high racing fees, *id.* ¶ 22. Inge claims that Defendants spread false rumors about him during the 2014 election to undermine his campaign. *Id.* ¶ 23.

Inge claims Defendant Nancy Selleck, CMRA's secretary, rigged the 2014 election by distributing ballots to CMRA members who were not entitled to vote. *Id.* ¶ 24. Inge then publically challenged the propriety of the election and asked to examine CMRA's meeting minutes, financial records, and the ballots cast during the election. *Id.* ¶ 25. Meanwhile, Inge alleges that Defendants openly defamed him both to other CMRA members and to his employer. *Id.* These statements, he claims, were made orally, in letters, and on CMRA's internet forum. *Id.* ¶ 37. Defendants allegedly violated CMRA's bylaws by terminating Inge's racing license and CMRA membership without notice or a hearing. *Id.* ¶ 27.

In his complaint, Inge accuses Defendants of (1) ultra vires acts; (2) defamation; (3) breach of contract; and (4) civil conspiracy. Defendants filed a motion to dismiss, which is now ripe for consideration.

## II.

## LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) authorizes the Court to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." *Id.* 12(b)(6). In considering a Rule 12(b)(6) motion to dismiss, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). The Court will "not look beyond the face of the pleadings to determine whether relief should be granted based on the alleged facts." *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When well-pleaded facts fail to achieve this plausibility standard, "the complaint has alleged — but it has not shown — that the pleader is entitled to relief." *Id.* at 679 (internal quotation marks and alterations omitted).

### III.

### ANALYSIS

A.  *Ultra Vires*

Inge, both on his and CMRA's behalf, asserts that Defendants committed ultra vires acts against him and CMRA. Doc. 103, Pl.'s Am. Compl., ¶ 34. He contends that Defendants violated

CMRA's bylaws for their own personal gain when they, among other things, terminated him without due process, publically defamed him, withheld their financial records and meeting minutes, misused CMRA funds, and counted ballots from ineligible members. *Id.* ¶ 33. Defendants argue, *inter alia*, that the ultra vires claim should be dismissed because Inge lacks standing to bring an ultra vires claim as he is no longer a member of CMRA. Doc. 103, Defs.' Mot. to Dismiss, 4–6. Inge asserts his ultra vires claim "as a member against [CMRA]. . . , as a member through a representative suit, and as a legal representative [of CMRA]. . . against [CMRA]" and the individual Defendants: current and former CMRA directors and employees. Doc. 90, Pl.'s Am. Compl., ¶ 34. Inge admits that he is no longer a member of CMRA. *See id.* ¶ 27. But he argues the Court should nevertheless treat him like one for standing purposes because his membership revocation, which he alleges occurred without a notice or a hearing, was an ultra vires act and is therefore void. Doc. 113, Pl.'s Resp., 7–8.

An ultra vires act is one that goes "beyond the scope of the powers of a corporation as defined by its charter or the laws of the state of incorporation." *Gearhart Indus., Inc. v. Smith Int'l, Inc.*, 741 F.2d 707, 719 (5th Cir. 1984); *see also* Tex. Bus. Orgs. Code § 20.002(c); *Staacke v. Routledge*, 241 S.W. 994, 498–500 (Tex. 1922). Only shareholders and members may bring an ultra vires claim against the corporation. Tex. Bus. Orgs. Code § 20.002(c)(1). And if the corporation asserts an ultra vires claim against its officers or directors, then it must do so "directly or through a receiver, trustee, or other legal representative, or through members in a representative suit." *Id.* § 20.002(c)(2).

The Court dismisses Inge's ultra vires claim because he does not have standing. The Court's decision is informed by *Swain v. Wiley College*, 74 S.W.3d 143 (Tex. App.—Texarkana 2002, no pet.). There, a nonprofit corporation violated its bylaws in the process of terminating its president. *Id.* at 145–46. The court concluded the former president, an ex-officio member of the board, did not

have standing to challenge the corporation's decision just because the procedures the corporation used to terminate him violated the bylaws. *Id.* at 150. The court explained that when a corporation violates its bylaws, its tainted actions do not automatically undo themselves; the corporation can either affirm or reject them. *Id.* at 146–48. Put simply, such decisions become voidable but only by "someone with standing to complain." *Id.* at 148.[2]

As was the case with the former college president in *Swain*, Inge does not has standing to sue CMRA because he is no longer a CMRA member. That Inge's CMRA membership was revoked in violation of the bylaws does not make him a CMRA member for standing purposes. Furthermore, Inge's claim that he is bringing this suit as CMRA's legal representative is a "mere conclusory statement[]" that the Court need not treat as true. *Iqbal*, 556 U.S. at 678. Because Inge is not a member or legal representative of CMRA, the Court dismisses with prejudice Inge's ultra vires claim for lack of standing.

B. *Defamation*

Inge next claims Defendants made "made literally dozens of written [and] oral statements that constitute defamation per se and *per quod*." Doc. 90, Pl.'s Am. Compl., ¶ 37. The complaint identifies twenty examples. *See id.* Defendants argue that Inge's defamation claim should be dismissed

---

[2] Inge asserts that *Zauber v. Murray Savings Association* compels the opposite conclusion. 591 S.W.2d 932 (Tex. Civ. App.—Dallas 1979, writ ref'd per curiam). But *Zauber* involved a shareholder derivative suit, not an ultra vires claim. *Id.* at 933. That distinction is critical; while former shareholders are expressly permitted to bring derivative suits, only current shareholders or members may assert ultra vires claims. *Compare* Tex. Bus. Orgs. Code § 20.002(c)(1) (allowing "a shareholder or member" to bring an ultra vires act), *with id.* § 21.552(1)(A) ("A shareholder may not institute or maintain a derivative proceeding unless the shareholder *was* a shareholder of the corporation at the time of the act or omission complained of." (emphasis added)). Because the Texas Legislature included a provision allowing former shareholders to bring derivative actions in one part of the code, but did not do so in the ultra vires section, the Court must conclude that the Legislature purposefully chose to prohibit former shareholders from bringing claims for ultra vires acts. *See Sneed v. Webre*, 465 S.W.3d 169, 183 (Tex. 2015).

(1) under the Defamation Mitigation Act (DMA); (2) under the Communications Decency Act (CDA); (3) because many of the allegedly defamatory statements are opinions; (4) because some of the statements are not about Inge; and (5) because Inge's factual allegations are conclusory and therefore not sufficiently pleaded. Doc. 103, Defs.' Mot. to Dismiss, 9. The Court addresses each argument in turn.[3]

1. DMA

Defendants argue first that Inge's defamation claim should be dismissed because he has not complied with the DMA. Under Texas law, a defamation claim requires the plaintiff to prove (1) that the defendant published "a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) damages." *In re Lipsky*, 460 S.W.3d 579, 593 (Tex. 2015). Under the DMA, "[a] person may maintain an action for defamation only if: (1) the person has made a timely and sufficient request for a correction, clarification, or retraction from the defendant; or (2) the defendant has made a correction, clarification, or retraction." Tex. Civ. Prac. & Rem. Code § 73.055(a)(1)–(2).

Inge has not alleged in his complaint that he made a request for correction, clarification, or retraction as required by § 73.055(a)(1).[4] Doc. 103, Defs.' Mot. to Dismiss, 10–11. In their briefing,

---

[3] First, for clarity, the Court did not rule on all of the Defendants' arguments as to Plaintiff's defamation claim at the hearing. Other than the DMA and CDA issues, the Court reserved ruling on the Defendants' defamation arguments pending further review. As set forth in the Order, as to those alleged defamatory statements not ruled upon at the hearing, the Court agreed with some of the Defendants' arguments and disagreed with others. As a result, some of the statements comprising the Plaintiff's defamation claim are dismissed by the Court for different reasons than those relied upon by the Defendants, some are dismissed for the same reasons and others remain in the case.

[4] Inge states in his response that he requested a clarification, correction, or retraction "on more than one occasion." Doc. 113, Pl.'s Resp., 12. This allegation is not in Inge's complaint and is too conclusory for the Court to rely on even during this early stage. *See Iqbal*, 556 U.S. at 678.

Defendants argue that this omission warrants dismissal of Inge's defamation claim. *Id.* The Court disagrees. Inge's failure to follow § 73.055(a)(1) does not require dismissal for failure to state a claim. *Hardy v. Commc'n Workers of Am. Local 6215 AFL-CIO*, No. 05-16-00829-CV, 2017 WL 1192800, *8 (Tex. App.—Dallas Mar. 31, 2017, pet filed). Allowing for dismissal under the DMA would read an additional remedy into the statute.[5] *See id.*

### 2. CDA

Defendants next argue that the CDA shields them from liability arising from various statements posted by third parties on CMRA's internet forum. Doc. 103, Defs.' Mot. to Dismiss, 11–12. The CDA states, "No provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). An information content provider is "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *Id.* § 230(f)(3). "The term 'interactive computer service' means any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." *Id.* § 230(f)(2). In this case, then, the interactive computer service is CMRA's internet forum, and the information content providers are those that post on the forum. *See FTC v. LeadClick Media, LLC*, 838 F.3d 158, 174 (2d Cir. 2016) (explaining that "online message boards . . . fall within [the] definition" of an interactive computer service). In sum, "[p]arties complaining that they were

---

[5] At the hearing, the Defendants essentially conceded that *Hardy* foreclosed their DMA argument.

harmed by a Web site's publication of user-generated content . . . may sue the third-party user who generated the content, but not the interactive computer service that enabled them to publish the content online." *Doe v. Myspace, Inc.*, 528 F.3d 413, 419 (5th Cir. 2008).

The Court concludes that dismissal is proper insofar as Inge brings this defamation claim against CMRA for posts on its online forum. As an interactive computer service, CMRA is immune from liability for defamatory posts made by its online forum's users. § 230(c)(1). Inge attributes most of the alleged defamatory statements to individuals who are defendants in this case. *See* Doc. 90, Pl.'s Am. Compl., ¶ 37. The three exceptions are statements[6] ten, fourteen, and fifteen[7]—comments made by nonparties Jessie Davis, Keith Hertell, and Marian Orchard. *Id.* Because they are not parties to this suit and because CMRA cannot be held liable for their alleged defamatory posting, the Court dismisses Inge's defamation claim with respect to those three statements. The Defendants appeared to concede this point as to Davis, Hertell and Orchard at the hearing.

3.  Statements of Opinion

Defendants next argue that many of the statements are not defamatory because they reflect an opinion. Doc. 103, Defs.' Mot. to Dismiss, 12–13. Under Texas law, opinions cannot give rise to

---

[6] All of the "statements" referred to in connection with Inge's defamation claim are contained in paragraph thirty-seven of his complaint. For ease of reference, the statements are identified in this Order in the same chronological order that they appear in the complaint. Additionally, for further clarity as to which statement the Court is addressing in a given context, the Court has numbered the statements in that same chronological order.

[7] **Statement ten:** "Take a step back from your keyboard and think for a second. Who in the **** really cares? . . . Didn't make the board of directors for [CMRA]? So yer [sic] gonna [sic] sue? Yeah. And I'm what's wrong with America. What a ****ing joke." **Statement fourteen**: "As a long time CMRA member, (18 years) I've never seen such a C[**]T!!!." **Statement fifteen**: "I'm sure this whole @(#$*@#$ thing wouldn't have happened had *someone* paid attention and aired their grievances in the appropriate (and frequently requested) manner." Doc. 90, Pl.'s Am. Compl., ¶ 37.

-8-

defamation claims. *Falk & Mayfield L.L.P. v. Molzan*, 974 S.W.2d 821, 827 (Tex. App.—Houston [14th Dist] 1998, pet. denied). This is because opinions, unlike statements of fact, cannot be proven. *See Bentley v. Bunton*, 94 S.W.3d 561, 579–81 (Tex. 2002). *See generally Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990). Also, opinions are protected by both the United States and Texas Constitutions. *Carr v. Brasher*, 776 S.W.2d 567, 570 (Tex. 1989). The Court concludes that statements three, four, seven, twelve, sixteen, and nineteen[8] are simply opinions. Whether Inge is, for example, "a pain in the ass," or "a terminal non[-] conformist," is a matter of opinion. Doc. 90, Pl.'s Am. Compl., ¶ 37. Statements like these are not subject to defamation claims.

4. <u>References to Inge</u>

Defendants also contend that statements one, five, eight, nine, and eleven[9] do not reference Inge and therefore cannot support a defamation claim. Doc. 103, Defs.' Mot. to Dismiss, 13–14.

---

[8] **Statement three:** "They said he was a pain in the ass! . . . He is a terminal non[-]conformist." **Statement four:** "[I]t is obvious that you're doing your best to try and discredit [] CMRA, its staff and the BOD with a partial story and irrelevant information." **Statement seven:** "The Board will not, however, waste [CMRA's] limited resources with unfounded threats of legal action and speculation about the results of a properly conducted and independently-verified election." **Statement twelve:** "Nancy Selleck . . . has endured unsubstantiated, hurtful false accusations and character assassination." **Statement sixteen:** "There are LOTS of inaccuracies in the petition." **Statement nineteen:** a string of text messages that depict Inge as Hitler. Doc. 90, Pl.'s Am. Compl., ¶ 37.

[9] **Statement one:** Defendant Selleck asking CMRA members what they thought about an unnamed "CMRA member who has been less than professional (i.e., threatening to sue [CMRA], cutting the fence to get back in the track after the gates are closed, making derogatory comments on social media, [engaging in] unethical behavior, etc.) serving as a Director on the Board?" **Statement five:** "[T]here are no financial errors or inconsistences in any of the returns." **Statement eight:** "[T]he Board is obligated to follow the processes and procedures and comply with the legal requirements for responding to any request." **Statement nine:** "To date, [CMRA] has not received a request that complies with the law." **Statement eleven:** "We've worked tirelessly to address this issue professionally and appropriately as a Board of Directors. . . . Each time we have reached out and tried to clarify what is actually being requested, we've been given new and unrelated demands, additional accusations and have had more threats of legal action to all members of members of the CMRA BOD and staff at every turn." Doc. 90, Pl.'s Am. Compl., ¶ 37.

Indeed, a plaintiff can only bring a defamation cause of action if the allegedly defamatory statements somehow concern him. *In re Lipsky*, 460 S.W.3d at 593. But the statements need not specifically name the plaintiff to be actionable; "a plaintiff can bring a claim for defamation when discrete facts, literally or substantially true, are published in such a way that they create a substantially false and defamatory impression by omitting material facts or juxtaposing facts in a misleading way." *Turner v. KTRK Television, Inc.*, 38 S.W.3d 103, 115 (Tex. 2000). Defamatory statements must be viewed in context of the publication they appear in. *City of Keller v. Wilson*, 168 S.W.3d 802, 811 (Tex. 2005).

Nonetheless, statement five[10] it not actionable because does not specifically mention or even vaguely reference Inge; it is a general affirmation that CMRA's financial records are correct. Doc. 90, Pl.'s Am. Compl., ¶ 37. The remaining statements (one, eight, nine and eleven) challenged by the Defendants refer to Inge when viewed in context. For example, statement one is a forum post by Defendant Selleck in which she asks CMRA members what they thought about an unnamed "CMRA member who has been less than professional (i.e., threatening to sue [CMRA], cutting the fence to get back in the track after the gates are closed, making derogatory comments on social media, [engaging in] unethical behavior, etc.) serving as a Director on the Board?" *Id.* (emphasis omitted). This was posted in 2014, when Inge was running for a director position and had threatened to sue CMRA. *See* Doc. 90, Pl.'s Am. Compl., ¶¶ 23–24.

5.  Sufficient Facts

Defendants next argue that Inge's defamation claim should be dismissed because several of

---

[10] **Statement five:** "[T]here are no financial errors or inconsistences in any of the returns." Doc. 90, Pl.'s Am. Compl., ¶ 37.

the statements lack a sufficient factual basis and is not pleaded specifically enough. Doc. 103, Defs.' Mot. to. Dismiss, 15. They claim that Inge failed to provide a date on which statement six was made and that he failed to identify the speaker for statements eight and twenty.[11] *Id.* The Court rejects Defendants' argument. The complaint alleges that statement six was made on November 13, 2014. Doc. 90, Pl.'s Am. Compl, ¶ 37. And Inge alleges statements eight and twenty were made by Defendants collectively. *Id.*

To summarize, after reviewing Defendants' arguments that certain of the statements Plaintiff claims are defamatory fail under the DMA and CDA, and because they are simply opinions, do not mention Inge, or do not contain sufficient facts, the Court concludes that Inge may proceed with his defamation claim against the individual defendants who authored statements one, two, six, eight, nine, eleven, thirteen, seventeen, eighteen, and twenty. *Id.*

C. *Breach of Contract*

Inge alleges that he entered into a contract with CMRA when he purchased a racing license. Pl.'s Am. Compl., ¶ 42. Under this alleged contract, CMRA was obligated to abide by its bylaws in exchange for his license fees. *Id.* Inge argues that CMRA breached the contract by violating its bylaws, which resulted in "lost income and significant additional travel expenses." *Id.* Defendants argue in their motion to dismiss that the breach of contract claim should be dismissed because Inge has not sufficiently pleaded facts regarding the contract's formation or damages stemming from an alleged breach. Doc 103, Defs.' Mot. to Dismiss, 18.

---

[11] **Statement six:** "Peyton was very vocal about his dislike for me." **Statement eight:** "[T]he Board is obligated to follow the processes an procedures and comply with the legal requirements for responding to any request." **Statement twenty:** "Why he's [sic] trying to destroy [] CMRA. He said that was his intent." Doc. 90, Pl.'s Am. Compl., ¶ 37.

To succeed on a breach-of-contract claim under Texas law, a plaintiff must demonstrate "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from the breach." *Lewis v. Bank of Am. NA*, 343 F.3d 540, 545 (5th Cir. 2003). A valid contract requires an offer, acceptance, mutual assent, execution and delivery of the contract with the intent that it be mutual and binding, and consideration. *Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex. App.—San Antonio 1997, no writ). "A 'meeting of the minds' is generally a required element of an enforceable contract." *Am. Bank of Commerce v. Davis*, No. 03-07-00264-CV, 2008 WL 5423248, at *3 (Tex. App.—Austin, Dec. 31, 2008, pet. denied). "The minds of the parties must . . . meet with respect to the agreement's subject matter and essential terms." *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 75 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Merely stating that a contract exists is not enough to survive dismissal; a plaintiff must allege a sufficient factual basis for the existence of the contract that "raise[s] a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

As set forth at the hearing, the Court concludes that Inge has not adequately stated a breach-of-contract claim. The complaint is vague and does not contain well-pleaded allegations indicating that Inge and CMRA had a meeting of the minds. Inge has not pleaded, for example, that CMRA understood it was binding itself to abide by its bylaws by accepting license payments from Inge. In short, Inge's breach-of-contract claims does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. Given the complaint's deficiencies, to allow Inge to proceed with his breach-of-contract claim would require the Court to speculate that a contract existed. This the Court may not do. *See id.* at 555. Further, because Inge has had ample opportunity to re-plead this

claim due to previous noted deficiencies, his contract claim is dismissed with prejudice.

D.    *Civil Conspiracy*

Inge asserts that Defendants conspired together to ruin his reputation by posting defamatory statements about him on the CMRA forum. Doc. 90, Pl.'s Am. Compl., ¶¶ 44–46. Defendants argue that the conspiracy claim should be dismissed because its factual basis is unsupported and conclusory. Doc. 103, Defs.' Mot. to Dismiss, 22.

To state a claim for civil conspiracy under Texas law, Plaintiffs must sufficiently allege the following elements: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). "[A] defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).

As stated at the hearing, the Court agrees with Defendants that Inge's conspiracy claim fails because his factual assertions are too conclusory. For example, instead of referring to specific instances of collusion, Inge merely alleges that "Defendants had a meeting of the minds." Doc. 90, Pl.'s Am. Compl., ¶ 45. Such bare assertions simply do not provide enough "factual content [to] allow[] the [C]ourt to draw the reasonable inference that the [D]efendant[s] [are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The civil-conspiracy claim thus fails as a matter of law. And, because Inge has already had an opportunity to re-plead this claim, his civil conspiracy claim is dismissed with prejudice.

## IV.

## CONCLUSION

For these reasons, the Court **GRANTS** in part and **DENIES** in part Defendants' Motion to Dismiss. Doc. 103. The Court **DISMISSES with prejudice** Inge's ultra vires claim, his defamation claim in part, his breach-of-contract claim, and his conspiracy claim. Inge may proceed with his defamation claim against the individual defendants who wrote statements **one**, **two**, **six**, **eight**, **nine**, **eleven**, **thirteen**, **seventeen**, **eighteen**, and **twenty**. CMRA is dismissed from this suit because it is not liable for the individual defendants' statements on the online forum under the CDA.

**SO ORDERED.**

**SIGNED: October 26, 2017.**

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE